UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANDOL ASSOCIATES MARKETING, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBINSON COMPANY d/b/a C.H. ROBINSON WORLDWIDE, INC., <br><br> Defendant. | 1:11-CV-01829-LJO-JLT <br><br> **ORDER ON MOTION FOR SUMMARY JUDGMENT** <br> (Docs. 21) |

## INTRODUCTION

On October 31, 2011, Plaintiff Pandol Associates Marketing, Inc. ("Pandol") brought this action for violation of the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499 against Defendant Robinson Company d/b/a C.H. Robinson Worldwide, Inc. ("CHR"). Before the Court is Pandol's motion for summary adjudication as to its sole cause of action under PACA. Having considered the parties' arguments and the entire record, the Court GRANTS Pandol's motion for summary adjudication.

## BACKGROUND

On February 27, 2010, an earthquake with a magnitude of 8.8 occurred near the coast of Chile and triggered aftershocks as well as a tsunami that struck the Chilean coast.

On March 17, 2010, Pandol and CHR entered into an agreement for Pandol to supply two loads of grapes for shipment from Chile to Brazil to CHR's co-signees, LPD Import and Export ("LPD") and Hetros Import and Export ("Hetros"). CHR, through Viviane Schappo ("Schappo"), sent

1

1  Loading Order #1065 on March 17, 2010 and Loading Order #1062 on March 18, 2010 to Pandol for
2  the two loads of grapes. Pandol then generated Invoice #51984 in relation to Loading Order #1065 and
3  Invoice #51985 in relation to Loading Order #1062. Each loading order and its related invoice specify
4  the price per unit of the produce agreed upon by Pandol and CHR. Each loading order also states the
5  amount of produce CHR ordered and the corresponding invoice states the amount of produce with
6  which Pandol filled the order. Both loading orders state the "Payment Terms" as "after good arrival"
7  and the produce as "FOB CHILE." Loading Order #1065 states the "Cut off" as Tuesday, March 23,
8  and the estimated time of arrival in Brazil as March 24. Loading Order #1062 states the "Cut off" as
9  Wednesday, March 24, and the estimated time of arrival in Brazil as April 2. Nonetheless, CHR
10 alleges that, when it sent the Loading Orders to Pandol, CHR "did not have a specific timeframe in
11 which the fumigation process or pick-up would transpire."

12 Shortly after March 18, 2010, Pandol instructed its suppliers to fumigate the two loads of
13 grapes and prepare them for shipping.

14 On March 20, 2010, Pandol notified CHR that the grapes for Loading Orders #1065 and
15 #1062 were available for pick-up. However, LPD and Hetros informed CHR that they could not locate
16 available trucks.

17 On April 6, 2010, Jim Pandol sent an email to CHR stating that CHR repeatedly told Pandol
18 that trucks would come to load within one to two days, but, after three weeks, CHR still had not picked
19 up the loads of grapes. He also stated that, "[b]ased on firm orders from CHR the product was
20 fumigated," and that, "[f]umigation is hard on the product and required timely movement after
21 fumigation." Jim Pandol emphasized the perishable nature of the produce and stated that some of the
22 grapes have become "tired" and showed discoloration. He stated that Pandol can load the product
23 according to CHR's wishes, "but at this point the terms would have to be FOB acceptance final."

24 On April 7, 2010, CHR responded by informing Pandol that its co-signees still could not
25 locate available trucks due to the effects of the February 27, 2010 earthquake and refusing to modify
26 the terms of the agreement to FOB final acceptance.

27 Jim Pandol responded that he "[u]nderstood" and that Pandol would work to mitigate
28 damages.

2

On April 12, 2010, Jim Pandol sent an email to CHR stating that the situation had not changed and that CHR may send its own inspector. On April, 12, 2010, CHR responded by asking whether the cargo was ready.

On April 14, 2010, LPD picked up the load of grapes for Loading Order #1065. On April 16, 2010, Hetros picked up the load of grapes for Loading Order #1062. Neither the co-signees nor CHR inspected the produce prior to loading.

After the loads arrived in Brazil, a third party inspector surveyed the produce on April 27, 2010. The inspector found some of the grapes in the loads to not be in good condition.

Pandol sent Invoices #1062 and #1065 to CHR on or around April 16, 2010. The total amount for Invoices #1062 and #1065 was $42,160.00. CHR has paid $19,768.00, and the remaining balance is $22,392.00.

On or around May 7, 2010, Pandol and CHR entered into an agreement for Pandol to supply grapes for CHR's co-signee, Fruitcola Cascique ("FC"). CHR sent Loading Order #1117 to Pandol on May 7, 2010, and Pandol generated related Invoice #51998. Loading Order #1117 contained similar terms as the previous two Loading Orders and stated the "Cut Off" as May 12. FC picked up the load of grapes on May 17, 2010. Invoice #51998 is for $25,260.00. CHR has paid $23,334.00, and the remaining balance is $1,926.00.

On October 31, 2011, Pandol commenced this action in this Court on the basis of the federal question jurisdiction. Pandol alleges one cause of action against CHR for violation of the PACA and filed the instant motion for summary judgment on March 25, 2010. CHR filed an opposition on April 15, 2010, and Pandol filed a reply on April 22, 2013.

## DISCUSSION

### Motion for Summary Judgment

A.    **Federal Rule of Civil Procedure 56**

    1.    **Legal Standard**

Fed .R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or

defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn*., 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec*., 475 U.S. at 586, n. 11; *International Union of Bricklayers v. Martin Jaska, Inc*., 752 F.2d 1401, 1405 (9th Cir. 1985).

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita*, 475 U.S. at 587. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); *see*, *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see*, *High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103; *see*, *Adickes*, 398 U.S. at 160. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to

4

support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see*, *Celotex*, 477 U.S. at 322. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–289 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**2.      Analysis**

Pandol alleges that CHR's failure to pay the full amount of Invoices #51984, #51985, and #51998 for the three loads of grapes violates PACA.

"Enacted in 1930, PACA had the intent of 'preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry.'" *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997) (citing *Farley and Calfee, Inc. v. United States Dep't of Agric.*, 941 F.2d 964, 966 (9th Cir.1991)). Dealers in perishable agricultural commodities violate PACA if they do not pay promptly and in full for any perishable commodity in interstate commerce. 7 U.S.C. § 499b(4).

PACA provides, in relevant part, that:

> It shall be unlawful in or in connection with any transaction in interstate or foreign commerce [] [f]or any commission merchant, dealer, or broker [. . .] to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had[.]

5

7 U.S.C. § 499(b)(4).

Such liability may be enforced either (1) by complaint to the Secretary of Agriculture or (2) by suit in any court of competent jurisdiction. 7 U.S.C. § 499(e)(4).

To comply with the full payment promptly provision, PACA requires payment by a buyer within ten days after the date on which the product is accepted. 7 C.F.R. § 46.2(aa)(5). A buyer who accepts the produce becomes liable to the seller for the full purchase price thereof, less any damages resulting from any breach of contract from the seller. *Lookout Mountain Tomato & Banana Co., Inc.*, 51 Agric. Dec. 1471 (Agric. Dec. Sept. 30, 1992) (citing *Norden Fruit Co., Inc. v. EDP Inc.*, 50 Agric.Dec. 1865 (1991), *Granada Marketing, Inc. v. Jos. Notarianni & Company, Inc*., 47 Agric.Dec. 329 (1988), *Jerome M. Matthews v. Quong Yuen Shing & Co*., 46 Agric.Dec. 1681 (1987)). The burden is on a buyer to establish the breach as to accepted goods. *Id*. (citing U.C.C. § 2-607).

The parties do not dispute that CHR failed to make full payment within ten days of accepting the loads of grapes, and that there is still an outstanding balance of $24,318.00 on the invoices that remains unpaid. Therefore, CHR is liable to Pandol for the remaining balance unless CHR can establish that Pandol breached the contract as to the three loads of grapes.

Pandol's duties under the contracts were to supply three loads of grapes of certain varieties in certain amounts for shipment to CHR's co-signees. Each of the three Loading Orders that CHR sent to Pandol stated "Cut off" dates for Pandol to supply the produce. The parties do not dispute that Pandol did indeed supply the three loads of grapes of the varieties and in the amounts agreed to by the respective "Cut off" dates as stated on the Loading Orders. The parties also do not dispute whether the grapes were in a suitable condition for shipment at the time Pandol fulfilled its contractual duties.

CHR relies on a USDA administrative decision to argue that Pandol breached its contractual duties because Pandol had actual notice of CHR's tardiness. The USDA found that, "[i]n instances of a buyer's tardiness, it has been held that the seller is required to take some action, either by attempting to renegotiate the contract terms to reflect the change of circumstances, or by refusing to ship if it was the seller's opinion that the produce was no longer in suitable shipping condition." *Stake Tomatoes*, 52 Agric. Dec. 770 (Agric. Dec. Apr. 26, 1993) (internal citations omitted). If the seller does neither, and simply ships the produce with knowledge that the produce is not in suitable shipping condition, the

seller will be held liable. *Id*. Here, it is undisputed that Jim Pandol did in fact attempt to renegotiate the contract terms to reflect the change of circumstance. As discussed above, Jim Pandol in his April 6, 2010 email to CHR, stated that, "at this point the terms would have to be FOB acceptance final." CHR refused to modify the terms of the contract in its April 7, 2010 response to Jim Pandol. However, Pandol's duty was only to attempt to renegotiate the contract terms.

Because CHR violated PACA by failing to make full payment promptly to Pandol for the produce after accepting it, and because CHR cannot establish that Pandol breached the contract as to the subject produce, Pandol's motion for summary adjudication as to its sole cause of action for violation of PACA against CHR is GRANTED.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court:

1. GRANTS Plaintiff Pandol's motion for summary judgment as to its sole cause of action for violation of PACA , and
2. ORDERS the Clerk of Court to enter judgment in favor of Plaintiff Pandol against Defendant CHR and to close the case.

IT IS SO ORDERED.

Dated:   **May 6, 2013**                    /s/ Lawrence J. O'Neill
                                            UNITED STATES DISTRICT JUDGE